712 So.2d 289 (1998)
STATE of Louisiana
v.
Michael LOTT.
No. 97-KA-1002.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Ellen Fantaci, Assistant District Attorneys, Gretna, for Plaintiff/Appellee.
Laurie A. White, Louisiana Appellate Project, New Orleans, for Defendant/Appellant.
Before WICKER, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
The defendant, Michael Lott, appeals his convictions on two counts of distribution of *290 cocaine, as well as his adjudication and sentencing as a multiple offender. For the following reasons, we affirm the convictions, vacate the multiple offender adjudication and sentence and remand the matter to the trial court.
On January 29, 1997, the defendant was charged by bill of information with two counts of distribution of cocaine, a violation of LSA-R.S. 40:967(A). Following a two-day trial held on March 31, 1997 and April 1, 1997, the jury returned with a verdict of guilty as charged on both counts. On April 7, 1997, the trial court sentenced the defendant to 25 years at hard labor on each count, and the court ordered the sentences to run consecutively.
On May 8, 1997, the state filed a multiple bill of information seeking enhanced sentencing of the defendant as a third felony offender in accordance with LSA-R.S. 15:529.1. After conducting a hearing on the multiple bill on August 26, 1997, the trial court adjudicated the defendant to be a third felony offender. The court then vacated the prior sentence and sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence, but with credit for time served.

FACTS
The instant charges arise from two separate undercover narcotics transactions. The officers involved in the transactions testified regarding the circumstances surrounding the two purchases establishing the following facts.
On the afternoon of July 31, 1995, Agent Jamal Taylor, equipped with a "Unitel transmitter" and a video camera, proceeded to the Robinson Avenue area of Marrero, Louisiana, in order to make a "street-level" purchase of narcotics. Upon entering the 300 block of Robinson Avenue, Agent Taylor stopped his vehicle. A subject approached whom Agent Taylor described as a black male, 5'10" in height, 170 pounds, 22 or 23 years old and wearing a white polo shirt and blue jeans. Agent Taylor purchased two rocks of crack cocaine for $40.00 from the subject.
Following the transaction, Agent Taylor met his supervisor, Agent Morton, who had monitored the transaction via radio receiver, and Agent Taylor submitted the evidence to Agent Morton. Ten days later, Agent Taylor viewed a photographic line-up and identified the defendant as the subject who sold him the crack cocaine. Thereafter, on August 14, 1995, a warrant was issued for the defendant's arrest.
Subsequently, on the afternoon of October 23, 1995, Agent John Curtis proceeded to the Robinson Avenue area in order to make a second undercover purchase of narcotics. Agent Curtis was similarly equipped with a transmitter and video camera. While traveling on Robinson Avenue, Agent Curtis noticed a subject approaching his vehicle. After stopping his vehicle, Agent Curtis purchased two rocks of crack cocaine for $40.00 from the subject whom he described as a black male with a short haircut, 6'3" in height, and wearing jeans and a maroon plaid shirt.
After the purchase, Agent Curtis met his supervisor, Agent Wilky, who had monitored the transaction via radio receiver, and Agent Curtis turned over the evidence to him. When Agent Curtis viewed a photographic line-up on January 16, 1996, he identified the defendant as the subject who sold him the two rocks of crack cocaine. Thereafter, in November of 1996, a warrant was issued for the defendant's arrest.[1]
Additionally, in conjunction with the testimony of Agent Taylor and Agent Curtis, videotapes of each transaction was played for the jury. The agents testified that their respective videos accurately depicted the events that occurred.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment, the defendant contends that the evidence was insufficient to prove that he was the perpetrator of these offenses.
*291 The standard to be used by the appellate court in evaluating the sufficiency of the evidence is, whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988). Encompassed in proving the elements of the offense is the necessity of proving the identity of the defendant as the perpetrator. When the key issue in the case is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Rowan, 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052.
At trial Agent Taylor and Agent Curtis testified regarding the facts of their respective narcotics transactions. Considering that the transactions occurred in daylight and involved face-to-face contact, the circumstances surrounding the agents' observations of the defendant were highly favorable. Furthermore, each agent positively identified the defendant as the subject who sold him crack cocaine.
In support of his claim of misidentification, the defendant argues that his identification by the agents was insufficient because of "1) the generic description of the suspect on which the identifications are based and 2) the significant time lapse between the transactions and identification, and identification and arrest ..."
However, after hearing all of the evidence, the jury chose to believe the testimony of Agents Taylor and Curtis regarding the identification of the defendant as the perpetrator of the offenses. It is the jury's function to determine the weight of the evidence bearing on the defendant's identification and it is not the reviewing court's function to re-evaluate the credibility choices and factual findings made by the jury. State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, writ denied, 94-0488 (La.2/3/95), 649 So.2d 400.
Viewing the evidence in the light most favorable to the prosecution and recognizing the state's burden to negate any reasonable probability of misidentification, a rational trier of fact could have found beyond a reasonable doubt that the defendant was the perpetrator of the offenses.
Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
By his second assignment of error, the defendant contends that the trial court made prejudicial comments about the evidence in violation of LSA-C.Cr.P. art. 772.
During the cross-examination of Agent Wilky, the supervising officer who was involved in the second transaction, the following exchange occurred when defense counsel questioned him concerning the warrant which was issued for the defendant's arrest for the first transaction:
Wilky:
... And this is not my warrant.
Perez (defense counsel):
Then why are you testifying as to the validity of that warrant?
Wilky:
I didn't testify to the validity of the warrant, sir.
Grant (prosecutor):
I never asked him about the validity of the warrant. The whole purpose is to show to the jury that he's been arrested much longer than the time of the actual incident. That's the warrant for Agent Taylor, that's not the one for Agent Wilky. Wilky:
Thank you.
The Court:
Alright, that clears it up. The only problem is it's confusing to the jury. I don't see the relevancy, to begin with, and this line of questioning obviously goes to the fact that warrants are issued and then executed at some time after they're issued and not necessarily immediately after; it could be a day or it could be a year. I don't know the relevancy.
Perez:

*292 The relevancy, Your Honor, is do we normally issue warrants for crimes before the crimes occur?
The Court:
Of course not. And I don't think that's the testimony of the witness.
Let me make sure from this witness.
You're not saying a warrant was issued for Lott (the defendant) before the alleged offense was committed, are you?
Wilky:
No.
The Court:
No. Okay.
Initially, it is noted that the defense counsel failed to object to the court's comments and questioning and therefore he waived the right to raise this issue on appeal. LSA-C.Cr.P. art. 841; State v. Ellwest Stereo Theatres, Inc., 412 So.2d 594 (La.1982); State v. Howard, 93-74 (La.App. 3 Cir. 11/2/94), 649 So.2d 489, writ denied, 94-2944 (La.3/17/95), 651 So.2d 266.
Nevertheless, we will address the merits of the assignment.
LSA-C.Cr.P. art. 772 provides:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
In State v. Williams, 375 So.2d 1379, 1381-1382 (La.1979), the Louisiana Supreme Court stated the following regarding the no-judge-comment rule established in LSA-C.Cr.P. art. 772:
The no-judge-comment rule is designed to safeguard the role of the jury as the sole judge of the facts on the issue of guilt or innocence. State v. Hodgeson, 305 So.2d 421 (La.1974) and decisions there cited. Thus, if the effect of a question or comment is to permit a reasonable inference that it expresses or implies the judge's opinion as to the defendant's innocence or guilt, this constitutes a violation of the defendant's statutory right to no-comment and thus requires reversal. State v. Green, 231 La. 1058, 93 So.2d 657 (1957). Likewise, any comment or question by the judge expressing or implying his opinion with regard to a material issue is reversible. State v. Hodgeson, 305 So.2d 421, 421 (La.1974) (summarizing decisions). (Footnote omitted)
The no-comment rule does not bar a trial judge from asking clarifying questions in the presence of the jury; nevertheless, in the exercise of this power, the judge's questioning must be cautiously guarded so as not to constitute an implied comment. State v. Nicholas, 359 So.2d 965 (La.1978). The judge may even question a witness as to a material matter which has been omitted, providing he does so in an impartial manner and conducts his examination in such a way that he does not indicate his opinion on the merits or any doubt as to the credibility of the witness. State v. Groves, 311 So.2d 230 (La.1975). See, generally, Joseph, Work of the Appellate Courts in 1974-75 Criminal Trial Procedure, 36 La.L.Rev. 605, 624-26 (1976).
In the instant case, the trial court's remarks did not imply an opinion as to the defendant's guilt or innocence. Additionally, the trial court's questioning of Agent Wilky merely clarified any misunderstanding regarding the issuance of the warrant authorizing the arrest of the defendant for the second transaction and such questioning did not constitute an implied comment on the facts. Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
By his third assignment, the defendant contends that the trial court erred in adjudicating him to be a third felony offender. However, considering our ruling on assignment of error number four, we pretermit a discussion of this issue.

ASSIGNMENT OF ERROR NUMBER FOUR
By his fourth assignment, the defendant contends that record of the multiple bill proceedings does not indicate which one of *293 the two counts of distribution of cocaine was being considered for enhanced sentencing.
In the multiple offender bill of information, the state sought enhanced sentencing of the defendant for a single conviction of distribution of cocaine. However, the state did not specify which one of the counts was being considered for an enhanced sentence. Additionally, at the multiple offender hearing, the trial court adjudicated the defendant a multiple offender as charged, vacated the previous sentence and imposed an enhanced sentence, without any specification regarding the counts.
Due to the lack of specification regarding the counts, we vacate the multiple offender adjudication and sentence and remand the matter to the trial court. See, State v. Valentine, 95-0970 (La.App. 4 Cir. 1/19/96), 668 So.2d 383.

ERROR PATENT DISCUSSION
We have reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). This review reveals that the trial court failed to advise the defendant of the prescriptive period for post-conviction relief as mandated by LSA-C.Cr.P. art. 930.8(C). However, no further action is required of this Court inasmuch as the matter is remanded, but the trial court is reminded and instructed to correct this omission when the defendant is resentenced.

DECREE
For the foregoing reasons, we affirm the defendant's convictions. However, we vacate the multiple offender adjudication and sentence and remand the matter to the trial court.
CONVICTIONS AFFIRMED; MULTIPLE OFFENDER ADJUDICATION AND SENTENCE VACATED; MATTER REMANDED.
NOTES
[1] At trial, the state offered to stipulate that the defendant was arrested on January 8, 1997; however, the defense counsel objected to the stipulation.